KIPP, Respondent, vs. LAUN and another, Appellants.

*April 10—October 3, 1911.*

*Parol evidence affecting writings: Indivisible contract: Fraud: Sale of land and of personalty: Deeds not containing the whole contract: Statute of frauds: Part performance: Equity: Specific performance by vendee: Definiteness of contract: Reference: "Taking of an account:" Appeal: Immaterial errors: Order of proof.*

1. The rule that excludes parol evidence when offered to add to, modify, or contradict a written instrument is inapplicable in the following among other cases: (1) when the writing does not on its face plainly purport to contain the entire contract and is shown by competent evidence to have been a mere part of an entire oral contract, and the oral contract is not inconsistent with and does not contradict the writing; (2) where there is a distinct contemporaneous parol agreement and one of the parties seeks to make use of a written agreement for purposes inconsistent with the parol agreement and under such circumstances as to render that use fraudulent.

2. A case cannot be brought within the first exception by oral evidence of the language used by the parties in their negotiations or in their alleged contract, where relief is not sought on the ground of fraud or mistake, and the parties stand upon the contract and do not seek rescission or reformation.

3. Deeds, showing upon their face that they are for the purpose of transferring title and not purporting to contain all the stipulations and conditions of the contract pursuant to which the transfer is made, do not bar parol evidence of such contract.

4. It is no ground for reversal that parol evidence which was in fact competent was admitted out of the proper order and before the evidence establishing its competency was introduced.

5. Although a deed and a previous writing in the form of a receipt executed by plaintiff contained no reference to a sale of anything but the real estate conveyed, yet, where it appeared that the grantor was a manufacturer owning practically all the stock of an active manufacturing corporation which occupied the premises in question and to whose wants they were well adapted, that plaintiff was desirous of retiring from business, and that the writings made no provision for the future of the corporation, which had no factory or real estate of its own, these facts tended to show, and formed a basis sufficient for

the court to decide as a preliminary question, that the writings did not contain the whole contract, thus opening the way for parol proof thereof.

6. Where the main inducement for plaintiff to sell the real estate, without which he would not have sold it, was defendants' agreement to buy the assets and capital stock of the corporation, and defendants, having acquired the real estate, sought to repudiate that part of the contract relating to the personal property and objected to the admission of parol evidence in proof thereof, this was making such fraudulent use of the writings as also to entitle plaintiff to prove the real agreement by parol.

7. It having been properly decided in such case that the writings did not contain the whole contract, it then followed that all that was said and done by the parties with reference to the purchase and sale became admissible.

8. An entire and indivisible parol contract for the sale of both real and personal property, if invalid as to the real estate under the statute of frauds, is invalid also as to the personal property.

9. Where, in pursuance of such a contract, a partial payment was made by the purchaser and a receipt given for the same by the vendor, containing the terms of sale of the real estate, and subsequently the real estate was conveyed and possession delivered to the purchaser, there was such part performance of the entire contract as to take it out of the operation of the statute of frauds, and the *status quo* was so far altered that to then hold void the unexecuted portion of the contract would operate as a fraud on the vendor.

10. In a case where the vendee in a contract of sale might have specific performance for a breach on the part of the vendor, the doctrine of mutuality requires equity to give similar relief to the vendor on his application, even though the substantial part of his relief is the recovery of money.

11. Where part of an entire contract relates to personal property and the rest to a subject matter, such as land, over which the jurisdiction is ordinarily exercised, specific performance may be had of the contract as a whole, including that part relating to the personalty.

12. Where a contract is definite in the main features thereof and in most of its details, but as to one particular is left in such condition that an inquiry as to reasonable value or reasonable time for performance is essential, that will not defeat the whole contract nor bar specific performance.

13. Where, in an action for specific performance embracing in part
the personal property and stock in trade of a manufacturing
corporation, it became necessary to determine what articles
were on hand at a certain date, what ones were sold and what
acquired after that date, and the fair value of each, this con-
stituted the "taking of an account" for the information of the
court which authorized an order of reference.

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARREN D. TARRANT, Circuit Judge. *Affirmed*.

For the appellants there was a brief by *N. L. Baker* and
*W. J. Zimmers*, and oral argument by *Mr. Baker*. They
cited, among other authorities, *Hackley Nat. Bank v. Barry*,
139 Wis. 96; *Kilpinski v. Bishop*, 143 Wis. 390; *Loree v.
Webster Mfg. Co.* 134 Wis. 173; *Ady v. Barnett*, 142 Wis.
18; *Erbacher v. Seefeld*, 92 Wis. 350; *Corbett v. Joannes*,
125 Wis. 370; *Braun v. Wis. R. Co.* 92 Wis. 245; *John
O'Brien L. Co. v. Wilkinson*, 117 Wis. 468; *Cliver v. Heil*,
95 Wis. 364; *Caldwell v. Perkins*, 93 Wis. 89; *Hei v. Heller*,
53 Wis. 415; *Westmoreland v. Carson*, 76 Tex. 619; *U. S.
G. Co. v. Gleason*, 135 Wis. 539; *Schoblasky v. Rayworth*,
139 Wis. 115; *Rowell v. Smith*, 123 Wis. 510; *Wales v.
Holden*, 209 Mo. 552; *Lozier v. Hill*, 68 N. J. Eq. 300;
*Seymour v. Cushway*, 100 Wis. 580; *Schneider v. Reed*, 123
Wis. 488; *Poole v. Tannis*, 137 Wis. 363; *Consolidated W.
P. Co. v. Nash*, 109 Wis. 490.

*Paul D. Durant*, for the respondent, cited *Mueller v. Cook*,
126 Wis. 504; *Klueter v. Joseph Schlitz B. Co.* 143 Wis.
347; *Jordan v. Estate of Warner*, 107 Wis. 539, 551; *Mc-
Donald v. Bryant*, 73 Wis. 20; *McMillan v. Pratt*, 89 Wis.
612, 622; *Zitske v. Grohn*, 128 Wis. 159; *Widman v. Gay*,
104 Wis. 277; *Prautsch v. Rasmussen*, 133 Wis. 181; *Nat.
K. Co. v. Bouton & G. Co.* 141 Wis. 63; *Docter v. Hellberg*,
65 Wis. 415; *Bartz v. Paff*, 95 Wis. 95; *Henrikson v. Hen-
rikson*, 143 Wis. 314; *Butterick P. Co. v. Rose*, 141 Wis.
533; *Harney v. Burhans*, 91 Wis. 348, 352; *Whitney v. Hay*,

181 U. S. 77; *Martineau v. May,* 18 Wis. 54; *Townsend v. Vanderwecker,* 160 U. S. 171; *Barrett v. Geisinger,* 148 Ill. 98; *Jones v. Pease,* 21 Wis. 644; and other cases.

The following opinion was filed May 2, 1911:

TIMLIN, J.    The undisputed evidence and the findings of the circuit court established that the plaintiff, on and prior to September 9, 1909, was and for about thirty years had been engaged in the manufacture and sale of furniture and owned two desirable tracts of real estate, one vacant and the other occupied by the factory buildings.    Since 1894 the plaintiff's furniture business was carried on by him in the name of a corporation called the B. A. Kipp Company, and this company was an active, going concern and used and occupied the buildings on the plaintiff's land above mentioned. Desiring to retire from business, the plaintiff authorized a real-estate agent to effect a sale of the plaintiff's interest in this corporation, which was practically the whole thereof, and, if necessary, to sell and dispose of said real estate on condition that the purchaser should also take the plaintiff's interest in said manufacturing corporation.    The findings further were to the effect that defendants were also engaged in the manufacture of furniture at Kiel, Wisconsin, and were introduced to the plaintiff and entered into negotiations with him relative to the purchase of the real estate aforesaid and the capital stock, good will, business, property, and assets of the said B. A. Kipp Company.    On September 9, 1909, these negotiations terminated in an entire and indivisible parol contract whereby for the sum of $82,000, payable $5,000 in cash, $15,000 on January 1, 1910, and $62,000 in five years with interest at five per cent. per annum, to be evidenced by notes and secured, plaintiff sold to defendants the real estate above referred to and agreed to execute and deliver to them a land contract for the sale and conveyance thereof upon the payment of the said $15,000 on January 1, 1910, and sold

all the property and assets of the B. A. Kipp Company exclusive of its bills and accounts receivable, and agreed to deliver on October 1, 1909, the entire issued and outstanding capital stock of said company, all for the fair value of the stock in trade, merchandise, fixtures, property, and assets of the B. A. Kipp Company exclusive of its bills and accounts receivable.   The mode of payment for this corporate property, which was all personal property, was $5,000 on October 1, 1909, and $5,000 on the first of each and every succeeding month thereafter until the purchase price, being the fair value as aforesaid, should be all paid.   September 11, 1909, this agreement was modified by providing that the $15,000 item should be paid as soon as the abstracts were examined, the land contract omitted, and a deed executed to the defendants, who thereupon would execute and deliver their promissory notes aggregating $62,000 secured by a mortgage on the real estate so conveyed.   On this day an instrument called therein a receipt was executed which acknowledged the receipt of $5,000 as part of the purchase money of the real estate (describing it), provided that $15,000 should be paid on September 16th and that the plaintiff should then execute and deliver to defendants a warranty deed, whereupon the latter were to give back mortgages.   This receipt provided further that possession of all the real property be given to the defendants on October 1, 1909.   (It does not mention the personal property at all nor hint at any existing contract regarding the latter property.)   The parties met on September 16th, and the defendants represented that they would carry out and perform the parol contract first mentioned, and relying on this the plaintiff, for the purpose of carrying out and performing on his part the terms, provisions, and conditions of said oral contract, executed to the defendants a warranty deed of the lands.   The latter executed to the plaintiff the notes and mortgages.   The plaintiff released all interest due on the deferred payments from September 16th to October 1st.

The defendants agreed that the B. A. Kipp Company should have the use and occupancy of the premises until October 1st, and the sale of said real estate and premises by plaintiff to defendants was conditioned on the purchase by defendants of the business, property, assets, and capital stock of the B. A. Kipp Company and their taking and assuming the management and control of its business and affairs on October 1, 1909. The inducement offered plaintiff to sell and dispose of his real estate was the agreement of defendants to purchase and take over the B. A. Kipp Company, paying the plaintiff therefor an amount equaling the fair value of the merchandise, stock in trade, machinery, fixtures, equipment, property, and assets whatsoever of said company, excepting its bills and accounts receivable as the same appeared on October 1, 1909. Both parties intended that the purchase and sale of the real estate of plaintiff and of the business, property, and assets of the B. A. Kipp Company were commonly dependent upon each other, and that the sale by the plaintiff of the real estate to defendants was dependent upon the purchase by defendants from plaintiff of the business, assets, and capital stock of the B. A. Kipp Company. Plaintiff went on and completed an inventory of the property, etc., of the B. A. Kipp Company and the valuation thereof and delivered the same to the defendants. Prior to this time defendants had entered upon the real estate and taken possession thereof and begun the erection of a factory building on the vacant portion thereof. On October 4, 1909, the plaintiff made a tender to the defendants, and again on November 1, 1909. Defendants refused to carry out the contract for the purchase of the personal property, while holding on to the real estate.

The defense was that the only contract entered into between plaintiff and defendants was that in writing called the receipt of September 11, 1909, wherein and whereby the plaintiff agreed to sell to the defendants and the defendants to buy for the sum of $82,000 said real estate. The findings of the

trial court, it must be confessed, make a pretty formidable
case against appellants, but they contend that the court erred
in admitting and considering parol testimony to modify and
change the terms and conditions of a written instrument and
to establish this parol agreement, which to be valid was re-
quired by the statute of frauds to be in writing. Rejecting
this parol evidence, they further contend there is not suffi-
cient evidence to support the findings of the court. In this
last proposition appellants are undoubtedly correct. But was
the parol evidence properly admitted? · In an action to en-
force specific performance of an oral contract taken out of the
statute of frauds by part performance, proof of the oral con-
tract as well as of the part performance is essential, notwith-
standing the oral contract would be utterly void but for the
part performance. In such case, where there is no writing,
if the court should exclude evidence of the terms of the oral
contract the part performance would be quite immaterial.
But that is not the case here. The part performance here
may have been not a part performance of the oral contract
claimed by the plaintiff, but a part performance or entire ·
performance of a separate and independent contract which
had no legal connection with the alleged oral contract. It
will be best to consider the admissibility of the testimony
under the rule excluding parol evidence before taking up the
questions arising under the statute of frauds, for these are
separate and distinct questions.

The rule that excludes parol evidence of oral agreements
or stipulations when offered to add to, modify, or contradict
a written contract is subject to some exceptions. Among
these are the following: (1) If the writing is shown by com-
petent evidence to have been a mere part of an entire oral
contract, and the oral contract is not inconsistent with and
does not contradict the writing, and the writing does not
on its face plainly purport to contain the entire contract,
then parol evidence of the oral contract is admissible. *Cor-*

*bett v. Joannes,* 125 Wis. 370, 104 N. W. 69; *Cuddy v. Foreman,* 107 Wis. 519, 83 N. W. 1103; *Mueller v. Cook,* 126 Wis. 504, 105 N. W. 1054; *Braun v. Wis. R. Co.* 92 Wis. 245, 250, 66 N. W. 196. (2) Where there is a distinct contemporaneous parol agreement, and one of the parties seeks to make use of a written agreement for purposes inconsistent with the parol agreement and under such circumstances as to render such use fraudulent. *Braun v. Wis. R. Co., supra,* p. 250; *Juilliard v. Chaffee,* 92 N. Y. 529.

These exceptions are purposely stated narrowly because we are not here attempting to define their limits or set bounds to their operation, but merely to inquire whether the instant case is within these exceptions as here written. A case cannot be brought within the first exception by oral evidence of the language used by the parties in their negotiations or in their alleged contract, where relief is not sought on the ground of fraud or mistake and the parties stand upon the contract and do not seek a rescission or reformation. The boundary lines of the second exception are not yet well settled, but it includes a case where the pleading makes a claim that the written agreement is being made use of for purposes inconsistent with a parol agreement and under such circumstances as to render such use fraudulent. This is in the nature of a direct attack upon the use attempted to be made of the written instrument. The parol evidence to prove the contract established by the findings of the circuit court in the instant case was admissible under both these exceptions. (1) The writings which it is supposed to contradict, vary, or alter are an instrument executed and dated on September 11, 1909, beginning with the words, "received of *J. B. Laun* and *A. W. Dassler,* both of Kiel, Wisconsin, the sum of $5,000," but followed by contractual stipulations for the purchase and sale of real estate (describing it) and fixing the price and terms of payment, and signed by the plaintiff and defendants, and also a warranty deed or deeds made pursuant

thereto. It is well settled law, however, that in the case of writings oral evidence may be given of extrinsic facts, conditions, and circumstances existing at the time of the writing and before and forming no part of the negotiations or of the language used by the parties in their alleged oral contract. *Colt v. Paulson,* 145 Wis. 214, 130 N. W. 55, and cases cited. It was in the instant case under this rule amply and fully shown that the real estate described in this contract of September 11, 1909, was in part a factory site covered with the factory and buildings occupied by the B. A. Kipp Company, a stock corporation, owned, except a few qualification shares, by the vendor in said contract; that this corporation was a going concern, active in manufacturing and selling, and had been for many years; and that it was in possession of the land described in the contract of September 11th by permission of the vendor therein. It is also proven that *Mr. Kipp* was anxious to retire from this business, and that the business, material, and manufactured product of this active, going corporation were of large value. *Mr. Kipp* was desirous of selling the manufacturing business and not desirous of selling the real estate. The manufacturing plant sold by the contract of September 11th was well or admirably adapted to the business of the Kipp manufacturing company, and the latter company had no real estate and no factory site of its own. The contract of September 11th made provision for turning over possession of this property to the defendants on October 1, 1909, nineteen days after the execution of the writing. There is no provision for the B. A. Kipp manufacturing company, whether it shall vacate the premises and discontinue its business or continue as the tenant of the new owner. There was no rent fixed. In short, the writing is entirely silent with reference to this large concern in possession and in operation and owned by the vendor in the land contract. It might be different if the vendor was not concerned in the manufacturing business. All this evidence is competent, and

when offered it tends to show and forms a basis sufficient for the circuit court to decide as a preliminary question that the writing of September 11th did not apparently contain the whole contract between the plaintiff and defendants, but that some part of it relating to the B. A. Kipp Company, its surrender of possession or its continuance in possession, or its purchase by the vendees, was omitted. It is incredible that *Mr. Kipp,* so largely interested in this manufacturing company, would sell the manufacturing site in which it was in active operation and agree to turn over possession in nineteen days, and make no provision whatever for the manufacturing company. So far as the deed or deeds given by the plaintiff to the defendants are concerned, such instruments present no difficulty in a case like this, because of the evidence mentioned and because they show on their face and from their intrinsic nature that they are for the purpose of transferring title and not for the purpose of containing all the stipulations and conditions of the contract pursuant to which such transfer was made. *Butt v. Smith,* 121 Wis. 566, 99 N. W. 328. The parol evidence was not admitted in the order stated, but that is no ground for reversal if the evidence was present and produced and might have been offered in the order aforesaid.

On the second exception it is alleged in the complaint in substance and in various forms that the real estate was sold to defendants as part of an agreement by which they were to buy also the personal property of the B. A. Kipp Company and assume the management and direction of its business. In reliance on the defendants' purchase of the personal property plaintiff consented to and contracted to sell and did so sell and convey to said defendants said real estate. Having thus acquired the real estate, the defendants are attempting to repudiate that part of the contract which relates to the personal property, which was the main inducement for plaintiff to sell them the real estate and without which he would not

have sold it. If this is true, then defendants are using the instruments in writing relating to the real estate for the purpose of excluding parol evidence of the conditions on which such writings were delivered. This would be making such fraudulent use of these writings as to entitle the plaintiff to prove by parol evidence the real agreement.

This situation is sufficiently covered by the pleadings, taking the averments in the complaint together with the defense set up in the answer. On both exceptions, therefore, parol evidence was admissible notwithstanding the rule invoked by appellants. Having properly decided that the writing did not contain the whole contract between the parties, it then followed that the real transaction might be sifted to the bottom and all that was said and done by the parties with reference to the purchase and sale became admissible. We need not recite the evidence in detail. It is sufficient to say that it fully supports the findings of the court below and that it appears that the plaintiff and defendants, having made by parol a contract for the purchase of the real estate, including the factory plant, for a fixed sum, and the purchase of all the property of the B. A. Kipp Company except its bills and accounts receivable, and all its shares of stock at a fair valuation on the actual property, proceeded to carry this out. When the parties had arrived at a stage in the execution of this contract where the defendants had secured the deeds to the land, made the payments necessary, and executed the mortgages for the deferred payments and got possession of the real estate, they refused to carry out their agreement to buy from the plaintiff the personal property of this corporation.

It is true that the oral contract was void as to the real property under the statute of frauds relating to real estate (sec. 2302, Stats. 1898) up to September 11, 1909, and, being entire and indivisible, was under this statute also invalid as to the personal property. *Clark v. Davidson,* 53

Wis. 317, 10 N. W. 384. It was also up to this time void under the statute of frauds relating to personal property (sec. 2308, Stats. 1898). But on September 11th by the execution and delivery of the so-called receipt; on September 16th by the execution and delivery of the deeds and the payment of money; and on or about October 1st by the defendants entering into possession of the real estate and the plaintiff listing and inventorying the personal property, there was, when taken all together, such part performance of this entire contract as to take the contract out of the operation of the statute of frauds. The *status quo* was altered to an extent that to then hold void the unexecuted fraction of this entire contract would operate as a fraud upon the plaintiff, and the damage if any which the law could allow him would be inadequate compensation. *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 962; *Butterick P. Co. v. Rose,* 141 Wis. 533, 124 N. W. 647; *Paine v. Wilcox,* 16 Wis. 202; *Horn v. Ludington,* 32 Wis. 73; *Mulligan v. Albertz,* 103 Wis. 140, 78 N. W. 1093.

It is next contended that the plaintiff has no equity to enforce specific performance because his demand is in substance to recover a sum of money for breach of a contract. But the law seems to be that, in case the vendee might have specific performance for a similar breach on the part of the vendor, the doctrine of mutuality requires equity to give similar relief to the vendor on his application. This is a question on which there is some slight conflict of authority. But it is chiefly on this ground that the rule exists that specific performance may be had at the suit of the vendor of land wherein the vendee is decreed to accept the deed and pay the purchase price. It was said in *Gates v. Parmly,* 93 Wis. 294, 306, 66 N. W. 253, 67 N. W. 739:

"Since the latter [the vendee] may, by a suit in equity, compel the execution and delivery of a deed of the premises, the vendor may also, by a similar equitable action, enforce

the undertaking of the vendee, although the substantial part. of his relief is the recovery of money." *Bumgardner v.. Leavitt,* 35 W. Va. 194, 13 S. E. 67, 12 L. R. A. 776.

There seems to be little doubt that under the facts found in this case the vendees would have been entitled to specific performance. A stock of goods connected with an existing business has an especial and peculiar value in connection with the transfer of such business, so a contract to sell an entire stock of goods or to sell an interest in a partnership has been specifically enforced. *Raymond Syndicate v. Brown,* 124 Fed. 80; *Ralston v. Ihmsen,* 204 Pa. St. 588, 54 Atl. 365. Where part of an entire contract relates to personal property,. and the rest to a subject matter such as land, over which the jurisdiction is ordinarily exercised, specific performance may be had of the contract as a whole, including the clause relating to personal property. *Leach v. Fobes,* 11 Gray, 506; *Perin v. Megibben,* 53 Fed. 86, 3 C. C. A. 443; *Brown v.. Smith,* 109 Fed. 26; *Jones v. Pease,* 21 Wis. 644; *Bartz v. Paff,* 95 Wis. 95, 69 N. W. 297. The case of *Jones v. Pease, supra,* is something like the instant case in that the contract included real and personal property and one of the items of part performance was the execution and delivery of a deed.

It is next urged that the oral contract found by the court to have been made was too indefinite with respect to the price to be paid for the personal property in question and with respect to the terms of payment to warrant a decree for specific performance thereof. This objection does not seem to be well taken. *Meyer v. Jenkins,* 80 Ark. 209, 96 S. W. 991; *Estes v. Furlong,* 59 Ill. 298; *Lister A. C. Works v.. Selby,* 68 N. J. Eq. 271, 59 Atl. 247; *Myers v. Metzger,* 61 N. J. Eq. 522, 48 Atl. 1113; *Hayes v. O'Brien,* 149 Ill. 403,. 37 N. E. 73; *Union Pac. R. Co. v. C., R. I. & P. R. Co.* 163 U. S. 564, 16 Sup. Ct. 1173; *Coles v. Peck,* 96 Ind. 333. To direct a valuation by a master in such a case does not conflict with the letter or spirit of the agreement. *Coles v..*

*Peck, supra.* There is a distinction to be observed with ref-
erence to subordinate or incidental portions of an agreement
and the whole body or purview of the contract. Where a
contract is definite in the main features thereof and in most
of its details, but one item is left in such condition that an
inquiry of reasonable value or reasonable time for perform-
ance is essential, that will not defeat the whole contract or
bar specific performance. *Union Pac. R. Co. v. C., R. I. &
P. R. Co.* 163 U. S. 564, 16 Sup. Ct. 1173. This case in this
respect is not within the rule of *J. L. Gates L. Co. v.
Ostrander,* 124 Wis. 287, 102 N. W. 558; *Eckel v. Bostwick,*
88 Wis. 493, 60 N. W. 784; *Schneider v. Reed,* 123 Wis. 488,
101 N. W. 682; 36 Cyc. 587. It is rather within the rule
of *Cunningham v. Brown,* 44 Wis. 72; *Docter v. Hellberg,*
65 Wis. 415, 27 N. W. 176; *Becker v. Holm,* 89 Wis. 86, 61
N. W. 307; *Inglis v. Fohey,* 136 Wis. 28, 116 N. W. 857; 36
Cyc. 596.

We find no error in the proceedings taken by the court to
preserve the property pending the litigation. Error is as-
signed because the trial court referred the question relating
to the fair value of the personal property to a referee. The
personal property purchased consisted of numerous items
which in the nature of things must be inventoried and sepa-
rately valued. It would be a very technical construction of
subd. 2 of sec. 2864, Stats. (1898), to hold that the ascertain-
ment of what items were present on October 1st, what were
sold and disposed of since, and at what price, what items, if
any, attempted to be included in the inventory were since ac-
quired, and what was the real value of each item, did not
constitute taking an account necessary for the information
of the court before judgment. "Taking an account of stock"
is a very common expression used to denote the ascertainment
and valuation of items in an inventory. We think the order
of reference was within the authority conferred on the court
by subd. 2 of said section.

Appellants assign error on the failure of the circuit court to change the place of trial, but do not argue this in their brief. We therefore overrule it without discussion.

We find no reversible error in the record and affirm the judgment.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied October 3, 1911.